UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                        Case No. 1:05-CR-166

POOHPA C. HAMPTON and                  HON. GORDON J. QUIST
COREY YARBROUGH,

      Defendants.

_____/

## OPINION

Defendants, Poohpa C. Hampton ("Hampton") and Corey Yarbrough ("Yarbrough"), have been charged in a five-count indictment with the following offenses: (1) possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Hampton and Yarbrough); (2) possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (Hampton); (3)  felon in possession of two firearms after having been convicted of at least three serious drug offenses, in violation of 18 U.S.C. § 924(e) (Hampton); (4) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (Yarbrough).  Hampton has filed a motion to suppress evidence seized from a motor vehicle and evidence seized from his residence on December 10, 2004.  Yarbrough has joined in Hampton's motion with regard to the seizure of evidence from the residence.  The Court held an evidentiary hearing on November 23, 2005, at which the Government presented testimony from various witnesses and offered exhibits relating to the searches of the vehicle and the residence.  The Court's findings of fact and conclusions of law are set forth below.

**Findings of Fact**

On December 10, 2004, Officer Craig Stouffer of the Kalamazoo Valley Enforcement Team ("KVET") received a telephone call from an anonymous source regarding Hampton and Yarbrough. The caller said that Hampton and Yarbrough lived at 1806 North Burdick Street in Kalamazoo and that they were in possession of three pounds of marijuana and small amounts of cocaine and heroin. The caller also said that there was a white Land Rover with South Carolina license plates parked in the driveway and that the vehicle was possibly stolen. Officer Stouffer immediately began an investigation and learned that there were outstanding arrest warrants for Yarbrough for failure to pay child support and that there was an outstanding arrest warrant for Hampton for driving with a suspended license.

Officer Stouffer drove to the area of 1806 North Burdick Street. He parked his car to the east of the address that the anonymous source had provided, but he discovered that 1806 North Burdick was a vacant lot. While he was parked in his car, however, he observed a white Land Rover with South Carolina license plates at 1807 North Burdick, which was across the street from the vacant lot.[1] Officer Stouffer ran the license number and discovered that it was registered to a different vehicle, but the vehicle had not been reported stolen. Officer Stouffer made contact with the owner of 1807 North Burdick, who told him that Hampton and Yarbrough rented the house and had been living there since August of 2004.

Officer Stouffer conveyed the information that he had obtained on Hampton and Yarbrough to his supervisor, KVET Sergeant Marty Buffenbarger. Sergeant Buffenbarger then contacted

---

[1]Officer Stouffer testified that the Land Rover was either there when he arrived or it arrived shortly after he parked his car.

2

Officer Craig Habel of the Kalamazoo Department of Public Safety, Community Policing Unit, to perform a "knock-and-talk" with the residents of 1807 North Burdick.  Sergeant Buffenbarger conveyed the information that he had received about Hampton and Yarbrough to Officer Habel, with the apparent misunderstanding that the confidential informant had provided the 1807 North Burdick address.

Officer Habel and two other uniformed officers arrived at 1807 North Burdick at approximately 2:30 p.m. on December 10.  Officer Habel saw the white Land Rover sitting in the driveway of the residence and walked to the window to determined whether the steering wheel had been "punched," which would indicate that the vehicle had been stolen.  Officer Habel determined that the steering wheel had not been "punched," and he obtained the vehicle identification number. While looking into the window, Officer Habel observed marijuana residue, consisting of a small amount of ground up marijuana and stems, on the center console of the vehicle.  An officer ran the vehicle identification number in the LEIN system and determined that the Land Rover had not been reported as stolen.

Officer Habel and the other officers went to the rear door of the residence.  Officer Habel knocked and announced himself as a police officer, but no one answered.[2]  While he waited at the door, Officer Habel noticed a strong odor of burnt or burning marijuana coming from the residence. After waiting for several minutes for someone to answer the door, Officer Habel returned to the Land Rover.  He checked the door of the vehicle, found it unlocked, and opened the door.  Officer Habel

---

[2]Officer Habel testified that he went to the rear door of the residence because Sergeant Buffenbarger had told him that Officer Stouffer reported seeing occupants of the residence use the rear door.  Officer Stouffer testified that while he was watching the residence, the Land Rover left for a short while and returned.  Officer Stouffer said that he saw individuals get out of the Land Rover and enter 1807 North Burdick, although he could not identify them.

3

retrieved the marijuana from the console and, upon searching the vehicle, found more marijuana in a "cubbyhole" located in the driver's side door.  Officer Habel conducted a field test which confirmed that the substance was marijuana.  In addition, Officer Habel found a bill of sale for the vehicle which showed that Hampton was the purchaser and which contained Hampton's signature. At some point while Officer Habel was at the residence, a woman pulled into the driveway in a burgundy-colored mini-van.  She told Officer Habel that she did not live there but that Yarbrough was her baby's father and that she was coming to pick up the baby.

Officer Habel left the residence in order to obtain a search warrant, while other officers remained behind to keep the house under surveillance.  Shortly after Officer Habel left, Hampton and Yarborough left the residence with the woman and a baby.  Hampton left in a car with the woman and the baby, and Yarbrough drove off separately.  Officers later arrested Yarbrough on the outstanding warrants on a nearby street.  Hampton returned to the residence shortly before the officers executed the search warrant.   The officers arrested Hampton on the outstanding arrest warrant.  Hampton admitted to smoking marijuana earlier in the day but denied knowledge of any drugs in the house.

Based upon Officer Habel's affidavit, a judge of the 8th District Court in Kalamazoo County issued a warrant authorizing a search of 1807 North Burdick for marijuana, cocaine, heroin, and evidence of drug dealing and firearms.  During the search of the residence, officers found approximately 21 grams of cocaine base in an attic off of a room apparently belonging to Hampton. The officers also found approximately 550 grams of marijuana, a loaded .38 caliber revolver, an unloaded Winchester .30 caliber semiautomatic rifle, and a shoe box containing nearly $3,000 in cash.  Inside the bedroom closet, officers found a bag containing approximately 26 grams of crack

in the pocket of an orange "Pronti" brand suit, a loaded magazine for the Winchester rifle, inside of a windbreaker jacket, and various documents bearing Hampton's name.  In another bedroom apparently used by Yarborough, the officers found approximately 25 grams of powder cocaine, fourteen grams of crack, ziplock baggies, and drug paraphernalia.  Finally, the officers found a coat with 54 baggies of crack in the dining room.

<u>**Conclusions of Law**</u>

The instant motion calls into question two separate searches, the search of the Land Rover and the search of the residence.  With regard to the search of the Land Rover, Hampton argues that Officer Habel lacked probable cause and exigent circumstances to search the vehicle.  As for the search of the residence, Hampton argues that the affidavit that Officer Habel submitted in support of his warrant application contained insufficient facts to establish probable cause that evidence of a crime would be found in the residence.  Yarbrough joins Hampton in this argument.

**I.      Search of the Vehicle**

Although Hampton notes that Officer Habel went onto "private property" to examine the Land Rover, he does not argue that the officers' entry onto his property violated the Fourth Amendment.  Nor could such an argument be sustained.  Courts, including the Sixth Circuit, have generally recognized that the Fourth Amendment is not implicated when a police officer approaches and knocks upon a person's door for the purpose of asking questions relating to an investigation.  <u>See</u>  <u>United States v. Chambers</u>, 395 F.3d 563, 567 n.2 (6th Cir. 2005) ( noting that "courts have generally upheld [the 'knock and talk'] investigative procedure as a legitimate effort to obtain a suspect's consent to search"); <u>Ewolski v. City of Brunswick</u>, 287 F.3d 492, 504 (6th Cir. 2002) (stating that  police officers acted reasonably in going to the decedent's door to obtain information

5

through consensual questioning of the decedent); United States v. Hammett, 236 F.3d 1054, 1059 (9th Cir. 2001 (observing that "anyone may 'openly and peaceably knock [on an individual's door] with the honest intent of asking questions of the occupant thereof – whether the questioner be a pollster, a salesman, or an officer of the law'") (quoting Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964)). Moreover, Hampton does not argue that the portion of the driveway on which the Land Rover was located was neither accessible nor visible to the public, such that Hampton had a reasonable expectation of privacy. See United States v. Smith, 783 F.2d 648, 651 (6th Cir. 1986) ("The fact that a driveway is within the curtilage of a house is not determinative if its accessibility and visibility from a public highway rule out any reasonable expectation of privacy.").

Hampton's argument is limited to the issue of whether Officer Habel had probable cause to search the Land Rover.  The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures."  U.S. Const. amend. IV.  This right is enforced through the requirement that searches be conducted pursuant to a warrant issued by a detached and neutral magistrate.  United States v. Pasquarille, 20 F.3d 682, 690 (6th Cir. 1994) (quoting California v. Carney, 471 U.S. 386, 390, 105 S. Ct. 2066, 2068 (1985)).  Thus, a warrantless search of private property will ordinarily be held to violate the Fourth Amendment.  See Arkansas v. Sanders, 442 U.S. 753, 758, 99 S. Ct. 2586, 2590 (1979).  One of the well-recognized exceptions to the warrant requirement is the "automobile exception," "which excuses the police from obtaining a warrant when they have probable cause to believe that a vehicle they have stopped at the side of the road contains evidence of a crime." United States v. Akram, 165 F.3d 452, 456 (6th Cir. 1999).  The automobile exception is not limited to vehicles stopped on the highway, but extends to unoccupied vehicles parked in private driveways.  See United States v. Markham, 844 F.2d 366, 368 (6th Cir. 1988)

(concluding that the automobile exception applied to an unoccupied motor home parked in a private driveway); United States v. Hatley, 15 F.3d 856, 859 (9th Cir. 1994) (holding that the automobile exception applied to a vehicle parked in a private driveway, even where the vehicle was inoperable, although it was apparently mobile); United States v. Wesley, 918 F. Supp. 81, 84 (W.D.N.Y. 1996) ("For a vehicle to fall within the automobile exception, it is not necessary that it be occupied or moving at the time of the police officer's intrusion into the vehicle."). The United States Supreme Court has held that the automobile exception is satisfied so long as the facts known to the police officer would support the issuance of a warrant, even if there are no exigent circumstances. Maryland v. Dyson, 527 U.S. 465, 466-67, 119 S. Ct. 2013, 2014 (1999) (per curiam). See also United States v. Graham, 275 F.3d 490, 509 (6th Cir. 2001) (stating that "most recently the Supreme Court has emphasized that no special exigency is required to conduct a warrantless search of an automobile when the car is mobile and the searching officer has probable cause to believe that fruits of a crime may be present in the automobile").

Another exception to the warrant requirement is the plain view exception. This exception to the warrant requirement applies when: (1) the officer did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed; (2) the item is in plain view; and (3) the incriminating character of the evidence is immediately apparent. See Horton v. California, 496 U.S. 128, 136-37, 110 S. Ct. 2301, 2308 (1990); United States v. Taylor, 248 F.3d 506, 512 (6th Cir.2001). "The standard does not demand an unduly high degree of certainty; rather, a plain view seizure is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." United States v. Calloway, 116 F.3d 1129, 1133 (6th Cir. 1997) (internal quotations omitted).

"Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" United States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999) (quoting United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990)).  The test for probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998) (internal quotation marks omitted).  The existence of probable cause must be determined using a "totality of the circumstances" test; that is, the question is whether, given all of the facts known to the police officer, there is a fair probability that contraband or evidence will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983).  When a search is conducted without a warrant, a district court must decide whether the objective facts known to the police officers established probable cause.  Akram, 165 F.3d at 456.  A confidential informant's tip may serve as the basis for probable cause, so long as the tip is "sufficiently detailed and corroborated by the independent investigation of law enforcement officers."  Lumpkin, 159 F.3d at 986.

The Court concludes that Officer Habel did not violate the Fourth Amendment when he seized the marijuana residue from the center console of the Land Rover and searched the Land Rover.  Although Officer Habel did not have a warrant, his actions were permissible both under the plain view exception and the automobile exception.  With regard to the plain view exception, as noted above, Officer Habel was lawfully on the premises to conduct a "knock and talk" and was entitled to look into the Land Rover, which was parked in the driveway and accessible for anyone to view.  See United States v. Reinholz, 245 F.3d 765, 777 (8th Cir. 2001) (concluding that police officers present at the defendant's residence to execute a warrant were entitled to search the defendant's car sitting in the driveway where drug paraphernalia was immediately apparent through

the car's windows). Officer Habel looked into the Land Rover, as he was entitled to do, and saw the marijuana residue in plain view on the center console of the vehicle. In addition, the incriminating nature of the marijuana residue was immediately apparent to Officer Habel. See United States v. McLevain, 310 F.3d 434, 441 (6th Cir. 2002) (noting that some items of contraband, such as marijuana or cocaine on a table in plain sight, are immediately recognizable as contraband). In United States v. Taylor, 248 F.3d 506 (6th Cir. 2001), the Sixth Circuit held that officers who were lawfully inside the defendant's apartment properly seized a marijuana stem on a table within plain view exception. The defendant argued that the plain view exception did not apply because possession of a marijuana stem was not illegal and, therefore, the incriminating nature of the stem was not immediately apparent because it could not be the basis for suspecting that drugs would be found in the apartment. The court rejected the argument, noting that even if the stem might later be determined to be from a mature stalk and thus excluded from the statutory prohibition on possession, the stem was nonetheless evidence of criminal activity. See id. at 512. See also United States v. Briscoe, 317 F.3d 906, 908-09 (8th Cir. 2003) (holding that marijuana stems and seeds recovered from the defendant's trash were "sufficient *stand-alone* evidence to establish probable cause"). Although Hampton suggests that Officer Habel could not have determined that the substance on the console was marijuana, the Court finds that Officer Habel had more than sufficient training and experience to enable him to determine that the substance on the center console was marijuana residue. Moreover, Officer Habel was not relying upon sight alone. He smelled burnt or burning marijuana coming from the residence and was aware that a confidential informant had provided information that the occupants of the house were in possession of marijuana. This information served to fortify his conclusion about the nature of the substance on the console.

9

Finally, because the marijuana residue was sufficient to establish probable cause that evidence of drug trafficking may be found in the Land Rover, Officer Habel was entitled to search the Land Rover under the automobile exception. The evidence presented at the evidentiary hearing established that the Land Rover was mobile and could be moved. In fact, Officer Stouffer testified that the Land Rover left the premises and returned while he was conducting surveillance. Thus, the seizure of the additional marijuana in the "cubby hole" in the door and the paperwork relating to the ownership of the Land Rover did not violate the Fourth Amendment.

## II.    Search of the Residence

Hampton and Yarbrough contend that the search of the residence was unlawful because Officer Habel's affidavit contained insufficient information to establish probable cause. Defendants bear the burden of establishing that the affidavit was insufficient to support the issuance of the warrant. See United States v. Blakeney, 942 F.2d 1001, 1015 (6th Cir. 1991).

To meet the probable cause requirement, an affidavit in support of "a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found on the premises to be searched." Blakeney, 942 F.2d at 1025. However, probable cause does require a "substantial basis" for concluding that evidence of a crime will be found at the location to be searched. See id. (citing Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). Both the Supreme Court and the Sixth Circuit have emphasized that the issuing court's probable cause determination is entitled to "great deference" by reviewing courts. United States v. Leon, 468 U.S. 897, 914, 104 S. Ct. 3416 (1984); United States v. Pelham, 801 F.2d 875, 877 (6th Cir. 1986). A magistrate's determination of probable cause should be upheld so long as the magistrate had a "substantial basis" for concluding that the search would lead to evidence of a crime. Pelham, 801 F.2d at 877-78.

The determination of the sufficiency of an affidavit is the "totality of the circumstances" test set forth by the Supreme Court in <u>Illinois v. Gates</u>, 462 U.S. 213, 103 S. Ct. 2317 (1983).  The Court stated in that case that

> [t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and 'basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

<u>Gates</u>, 462 U.S. at 238, 103 S. Ct. at 2332.

In his affidavit in support of the warrant, Officer Habel described his training and experience in drug trafficking investigations and drug identification.  (Warrant Aff. ¶ 2A.)  Officer Habel also set forth the information provided by the confidential informant, which included the full names of Hampton and Yarbrough; information regarding Defendants' possession of quantities of marijuana, cocaine, and heroin; Defendants' address on North Burdick (although off by one number); and information that a white Land Rover with South Carolina plates was parked in the driveway of the residence and was possibly stolen.  (<u>Id.</u> ¶ 2B.)  Officer Habel also described the results of the KVET investigation, which confirmed many of the details provided by the anonymous tip.  That information was that Defendants were renting a residence on North Burdick; a white Land Rover with South Carolina plates was parked in the driveway; Officer Habel smelled burning marijuana coming from inside the house; and Officer Habel found a substance in the Land Rover which field tested positive for marijuana as well as a bill of sale connecting Hampton to the vehicle.  (<u>Id.</u> ¶¶ 2C., 2F., 2H.)

The Court concludes that the information set forth in affidavit contained sufficient detail to establish probable cause, even though it was based, in part, upon information provided by an anonymous tip.  In order "to receive a high level of consideration, allegations from an anonymous

tipster must demonstrate veracity, reliability, and a sound basis for knowledge." United States v. Helton, 314 F.2d 812, (6th Cir. 2003) (citing Florida v. J.L., 529 U.S. 266, 271-72, 120 S. Ct. 1375, 1379 (2000), and Gates, 462 U.S. at 230, 103 S. Ct. at 2328). See also United States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999) ("An affidavit . . . must contain a statement about some of the underlying circumstances indicating the informant was credible or that his information was reliable"). Officer Habel's affidavit contained a sufficient degree of corroboration to show that the anonymous tipster was both credible and reliable and that the tipster had a reliable basis for the information provided to Officer Stouffer. The degree of information in this case distinguishes it from United States v. Leake, 998 F.2d 1359 (6th Cir. 1993), upon which Hampton relies, in which the information furnished by the anonymous caller was not rich in detail and did not even include the names of the residents and the investigating officer's corroboration was minimal. Likewise, this case is distinguishable from United States v. Weaver, 99 F.3d 1372 (6th Cir. 1996), also cited by Hampton, in which the investigating officer took no additional steps to corroborate the informant's story. Rather, this case is similar to United States v. Elkins, 300 F.3d 638 (6th Cir. 2002), where the court held that a recitation in an affidavit that police officers smelled marijuana inside a house was sufficient to corroborate an anonymous tip that the defendants were growing marijuana in their home. See id. at 659-60 (stating that "we . . . hold that the three officers' detection of the marijuana smell inside the house corroborated the tip enough to establish probable cause for a warrant"). Moreover, the court noted that an officer's detection of the smell of marijuana within a home may be enough to establish probable cause for a search. See id. at 659.

Finally, Hampton attacks the affidavit because it contains an untrue statement by the affiant and a mistaken statement by the tipster. In particular, Hampton notes that paragraph 2B. of the

affidavit states that the tipster stated that Defendants resided at 1807 North Burdick, when in fact, the tipster said that Defendants resided at 1806 North Burdick.  As noted above, this misstatement apparently resulted from a miscommunication between Sergeant Buffenbarger and Officer Habel. Nothing suggests that Officer Habel intentionally or recklessly included this information in the affidavit and, given the extent of the other information in the affidavit, it is difficult to see how this minor misstatement could negate the existence of probable cause.  With regard to the asserted mistaken statement, the Court notes that the statement is only that the Land Rover was "possibly stolen."  Although the officers determined that the vehicle was not stolen, this did not prove that the informant was unreliable.  The officers' independent investigation showed that the informant was accurate in several material respects, including, most importantly, with regard to the presence of marijuana.  Thus, the asserted flaws provide no basis for concluding that the affidavit fails to establish probable cause.

### Conclusion

 For the foregoing reasons, the Court will deny Defendants' motions to suppress.

An Order consistent with this Opinion will be entered.


Dated:  December 27, 2005                          _____/s/ Gordon J. Quist_____
                                                                      GORDON J. QUIST
                                                            UNITED STATES DISTRICT JUDGE